# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PENNY DIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13 CV 890 DDN |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Penny Dixon for disability insurance benefits and social security income benefits under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401, 1381. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

Plaintiff was born on January 26, 1962. (Tr. 141.) She filed her applications on August 9, 2010. (Tr. 76, 134-43.) She alleged an onset date of June 10, 2010, and alleged disability due to high blood pressure and stress. (Tr. 162.) At the administrative hearing, she also alleged fibromyalgia, depression, post-traumatic stress disorder, back problems, and other impairments. (Tr. 40.) Plaintiff's applications were denied initially, and she requested a hearing before an ALJ. (Tr. 79, 87.)

On June 27, 2012, following a hearing, the ALJ issued a partially favorable decision. (Tr. 36-69, 22-30.) In the decision, the ALJ found that plaintiff had the severe

impairments of depression and fibromyalgia. (Tr. 24.) The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sedentary work. (Tr. 25.) After consulting a vocational expert (VE), the ALJ concluded that plaintiff's RFC would permit her to perform a significant number of jobs. (Tr. 29.) However, once plaintiff reached the age of fifty, the Medical Vocational Guidelines directed a finding of "disabled." Accordingly, the ALJ found that plaintiff became disabled when she reached fifty years of age. (Tr. 30.)

On March 28, 2013, the Appeals Council denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

From September 15-17, 2010, plaintiff was hospitalized at Christian Northeast Hospital under Abdul K. Muhammud, M.D., her primary care physician, for evaluation of uncontrolled high blood pressure. She was a smoker of about twenty years. An MRI of her brain revealed abnormalities possibly caused by hypertension. Her blood pressure improved, and she was discharged in stable condition. Her diagnoses at discharge were uncontrolled hypertension; positive antinuclear antibody (ANA) test, which indicates possible rheumatoid arthritis; history of an abnormal MRI; and left neck pain. (Tr. 452-56.)

On October 1, 2010, plaintiff saw Steven Baak, M.D., for follow up after her hospitalization. Dr. Baak's plan was to begin therapy for fibromyalgia and chronic pain, as well as physical therapy. He also started her on an antidepressant and insomnia medication. (Tr. 386.)

On October 18, 2010, Laura Tishey, Psy.D., a psychologist, performed a consultative evaluation at the agency's request. Plaintiff reported to Dr. Tishey that she was very depressed. Dr. Tishey found plaintiff only mildly depressed. Dr. Tishey did not observe any significant impairment in plaintiff's concentration or memory and diagnosed major depressive disorder and possible somatoform disorder, a mental disorder

characterized by symptoms that suggest physical illness or injury. Dr. Tishey assigned plaintiff a Global Assessment of Functioning (GAF) score of 65, indicating mild symptoms. Dr. Tishey opined that plaintiff could understand and remember instructions, sustain attention and concentration "fairly well," interact socially, and adapt to the exam environment. (Tr. 389-95.)

On November 22, 2010, Robert Cottone, Ph.D., a non-treating, non-examining physician employed by the Missouri DDS, opined that plaintiff did not have a severe mental impairment and had only mild functional limitations. (Tr. 398-408.)

On December 21, 2010, Dr. Muhammud completed a Physical Medical Source Statement. He diagnosed uncontrolled hypertension, degenerative joint disease of the cervical spine, fibromyalgia, and other impairments. He believed that plaintiff could sit, stand, or walk for thirty minutes at a time, and could frequently lift five pounds at most. He opined that plaintiff was limited in terms of balancing, occasionally required a cane, would need to lie down or nap during the workday, and would be absent from work three or more times per month. In response to a question that asked whether plaintiff's pain would interfere with her ability to perform simple tasks, he answered "yes." Dr. Muhammud reported plaintiff's onset date as May 24, 2010, her first office visit. (Tr. 409-12.)

On June 14, 2011, Dinu Gangure, M.D., a psychiatrist, performed an initial psychiatric evaluation. Dr. Gangure diagnosed recurrent major depressive disorder and post-traumatic stress disorder (PTSD). He assigned a GAF score of 50, indicating serious symptoms, and prescribed Zoloft, an anti-depressant. (Tr. 425-27.) On July 19, 2011, Dr. Gangure believed that plaintiff was "psychiatrically stable." (Tr. 429.) Subsequent treatment notes described continued stability with continuing depression. (Tr. 432.)

Dr. Gangure completed a Mental Medical Source Statement on September 13, 2011. He rated plaintiff as markedly limited in eight of fifteen categories, including the category of "making simple and rational decisions." (Tr. 441–42.) Dr. Gangure also indicated that plaintiff could "apply commonsense understanding to carry out simple one-

or two-step instructions" for only four hours and interact appropriately with others for zero to two hours during an eight-hour workday. Dr. Gangure also believed that plaintiff would miss three or more days of work per month. (Tr. 441-43.)

Plaintiff continued to see Dr. Gangure. On September 20, 2011, Dr. Gangure noted that plaintiff was feeling better. (Tr. 470.) On October 17, 2011, he increased her Zoloft dosage after plaintiff reported that it was only partially effective. (Tr. 491-92.) Dr. Gangure noted continued psychiatric stability in subsequent visits. (Tr. 544-52.)

On January 7, 2012, David Bradley, M.D., completed a consultative physical exam at the agency's request. Plaintiff reported that fibromyalgia caused pain throughout her body, poor appetite, medication-related dizziness, and hyper-somnolence or drowsiness. Upon examination, plaintiff did not have spine tenderness, muscular atrophy, or significantly decreased range of motion. She had a normal gait but used a cane. Dr. Bradley noted that plaintiff reported tenderness all over her body and winced when touched, which "appear[ed] genuine." (Tr. 496–97.) He believed that plaintiff's back pain was likely due to sciatica. He believed that many of plaintiff's problems, including oversedation and dizziness, appeared related to her medication, rather than her physical diagnoses. He felt that while her fibromyalgia was difficult to assess, she did appear to carry the diagnosis. Dr. Bradley opined that due to her fibromyalgia and unsteadiness related to medications, plaintiff was likely to have limitations in lifting, squatting, and standing for long periods of time. He thought that she was likely to have no limitations in performing activities such as hearing, speaking, and traveling. (Tr. 494-97.)

Dr. Bradley also completed mental and physical assessment forms. He opined that there were no mental limitations. On the physical assessment form, he indicated that plaintiff could frequently lift up to twenty pounds. He believed that plaintiff could sit for up to eight hours, stand for up to four hours, and walk for up two hours in an eight-hour day. He did not think that plaintiff required a cane. He also indicated that plaintiff could frequently reach, push, or pull. In terms of postural activities, he felt plaintiff could climb occasionally, stoop frequently, and perform other activities continuously. (Tr. 500-07.)

Three months later, on April 3, 2012, Dr. Bradley answered interrogatory questions posed by plaintiff's attorney. As part of the interrogatories, Dr. Bradley was instructed to review new medical evidence as well as plaintiff's nap logs. Dr. Bradley believed that the medical evidence established a diagnosis of degenerative joint disease of the cervical spine. (Tr. 516-24.)

Dr. Bradley also completed another physical assessment form. He indicated that plaintiff could occasionally lift and carry up to twenty pounds. Dr. Bradley opined that plaintiff could stand for two hours and walk for one hour during an eight-hour workday. He felt that plaintiff could occasionally reach, push, or pull. Dr. Bradley indicated that plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, and could frequently balance. He did not think she required the use of a cane. (Tr. 516-24.)

**ALJ Hearing**

The ALJ conducted a hearing on November 15, 2011. (Tr. 36-70.) Plaintiff appeared and testified to the following. She cannot stay up long and is in a lot of pain. She has difficulty exerting herself, wearing normal shoes, cooking, and doing chores. Her adult daughter had moved in with her and was supporting her. She has crying spells. She receives help from a mental health case manager who visits her home on a monthly basis. She had been using a cane for over a year. (Tr. 53-63.)

Tracie Young, a vocational expert (VE), also testified at the hearing. She described plaintiff's past relevant work (PRW) as varying from light to heavy and either unskilled or semi-skilled. (Tr. 67.) Following the hearing and after the ALJ obtained additional evidence from consultative examiner Dr. Bradley, the ALJ provided written interrogatories to the VE. (Tr. 233-36.) After testifying that all of plaintiff's PRW was either medium or heavy and unskilled, the VE was asked to assume a hypothetical of plaintiff's age, education, and work experience. The individual had the RFC to perform medium work except that she could stand for only 4 hours and walk for only 2 hours in an

eight-hour workday. She had no limitations with regard to sitting. She could frequently reach in all directions with both upper extremities and push and pull with both upper extremities. She could occasionally climb stairs and ramps but never climb ladders and scaffolds. She could infrequently kneel and frequently operate a motor vehicle. She was limited to performing semi-skilled or unskilled work. (Tr. 234.)

The VE responded that all of plaintiff's past work was precluded under the hypothetical because all of her past work exceeded the standing and walking limits. The VE identified other jobs that the hypothetical individual could perform such as telemarketer, sorter, and reception clerk, all at the sedentary level because of the standing and walking limits. (Tr. 235.)

**Decision of the ALJ**

On June 27, 2012, the ALJ issued a partially favorable decision finding that plaintiff was disabled as of January 25, 2012, when she reached age 50, but not as of June 9, 2010, her alleged onset date. (Tr. 22-30.) The ALJ concluded that with plaintiff's RFC, education, past work history, and exertional limitations, the Medical-Vocational Rules (the "grids") determined that she became disabled at age 50. (Tr. 28-29.)

The ALJ found that plaintiff had the severe impairments of depression and fibromyalgia. (Tr. 24.) The ALJ determined plaintiff's RFC, finding that plaintiff could meet the basic demands of sedentary work with some added limitations. The ALJ found that plaintiff could stand for up to four hours and walk for up to two hours in the workday. The ALJ also found that plaintiff could frequently kneel, reach, push, pull, and operate motor vehicles. In terms of mental limitations, the ALJ limited plaintiff to semi-skilled or unskilled work. The ALJ found that plaintiff retained the RFC to perform a reduced range of sedentary work. (Tr. 25-26.)

At step four, the ALJ found that plaintiff had been unable to perform past relevant work since June 9, 2010. He based his finding on the VE's testimony that plaintiff would

be unable to return to any of her prior relevant work because it was done at the light exertional level or higher. (Tr. 28.)

At step five, the ALJ determined, considering his RFC finding and plaintiff's age, that the framework of the Medical-Vocational Rules and specifically Rule 201.10 directed a conclusion that plaintiff became disabled as of when she attained the age category of "closely approaching advanced age" (age 50). (Tr. 28-29.) The ALJ determined that prior to age 50, plaintiff was not disabled because she was able to perform other work that existed in significant numbers in the national economy such as telemarketer, sorter, and reception clerk. (Tr. 29-30.).

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen

v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues that the ALJ erred in failing to include greater limitations in his mental and physical RFC findings, specifically in light of plaintiff's depression. She argues that while the ALJ found that she had the severe impairment of depression, his RFC included only exertional limitations and failed to include a mental functional consequence of her depression or a limitation regarding concentration, persistence, or pace. This court disagrees.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of her limitations. Donahoo v. Apfel, 241 F.3d

1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a).  While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional.  Lauer, 245 F.3d at 704.  An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (1996).

Here, the ALJ determined that plaintiff had the RFC to meet the basic demands of sedentary work with some added limitations.  The ALJ found that plaintiff could stand for up to four hours and walk for up to two hours in the workday.  The ALJ found that plaintiff could frequently kneel, reach, push, pull, or operate motor vehicles.  In terms of mental limitations, the ALJ limited plaintiff to semi-skilled or unskilled work.  (Tr. 26.)

In determining the effect of plaintiff's depression, the ALJ gave weight to Dr. Tishey's consultative examination.  The ALJ noted that Dr. Tishey found that plaintiff could understand and remember instructions, sustain attention and concentration "fairly well," interact socially, and adapt to the exam environment.  (Tr. 27, 394.)  He assigned plaintiff a GAF score of 65, indicating mild symptoms.  (Tr. 27, 394.)  Thus, aside from indicating that plaintiff could sustain attention and concentration "fairly well," Dr. Tishey did not observe any mental limitations.  (Tr. 394.)  The ALJ accounted for plaintiff's mild attention and concentration deficit by limiting her to semi-skilled or unskilled work, which does not involve complicated instructions.  (Tr. 25–27.)  See SSR 82-41, 1982 WL 31389, at *7 (1982) (unskilled jobs are "the least complex types of work"; semi-skilled jobs are "more complex than unskilled work and distinctly simpler than the more highly skilled types of jobs").

The ALJ gave little weight to the opinion of plaintiff's treating psychiatrist, Dr. Gangure.  (Tr. 27.)  Plaintiff asserts that Dr. Gangure's opinion deserved greater weight.  However, the ALJ provided good reasons to question Dr. Gangure's conclusions.  In his Mental MSS, Dr. Gangure believed that plaintiff was markedly limited in many areas,

including simple decision-making. Dr. Gangure also indicated, in effect, that plaintiff could complete simple instructions for only half the workday. (Tr. 441-43.)

The ALJ discounted Dr. Gangure's opinion, noting that plaintiff had seen Dr. Gangure only three times over a three-month period and because his opinion was not supported by the record as a whole. (Tr. 27.) While Dr. Gangure's limited relationship with plaintiff did not mean that his conclusions were unreliable, it did mean that his opinion was not entitled to the special deference reserved for treating sources. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (treating physician's opinion is generally given controlling weight, but is not inherently entitled to it); 20 C.F.R. § 404.1527(d)(2). The ALJ considered Dr. Gangure more akin to a consultative examiner than to a treating physician. Cf. Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (a physician's opinion was not entitled to controlling weight as a medical opinion of a treating source because she only met with the claimant on three prior occasions). Thus, Dr. Gangure did not have the type of longitudinal experience with plaintiff to justify giving his opinion enhanced weight. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("[W]e give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective . . . ."). The ALJ also found that Dr. Gangure's opinion was not supported by the record evidence. He therefore deferred to what he considered Dr. Tishey's better-supported assessment which did not reveal any significant mental limitations. (Tr. 27, 394.)

RFC refers to what the claimant can still do despite the physical and mental limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (defining RFC). It is not a statement of education or work history. Among other RFC limitations, the ALJ's hypothetical interrogatory questions to the VE were sufficient in that they included the limitation to unskilled or semi-skilled work. (Tr. 234.) Plaintiff has not provided any law from this Circuit indicating otherwise.

With respect to physical limitations, the ALJ gave weight to Dr. Muhammud's December 2010 treating opinion, as well as Dr. Bradley's January and April 2012 consultative assessments. (Tr. 27-28.) In terms of lifting restrictions, the ALJ's RFC finding was similar to Dr. Muhammud's opinion. The ALJ limited plaintiff to sedentary work, which involves lifting up to ten pounds, and occasionally carrying small items. See 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work). Dr. Muhammud opined that plaintiff could never lift ten pounds, but could frequently carry items that weighed five pounds. (Tr. 410.) In terms of sitting, standing, or walking, the ALJ's findings were most consistent with Dr. Bradley's January 2012 assessment. Consistent with Dr. Bradley, the ALJ found that plaintiff could stand for four hours and walk for up to two hours during the workday. The ALJ also found, consistent with Dr. Bradley's January 2012 opinion, that plaintiff could occasionally climb stairs, and frequently drive, reach, push, or pull. (Tr. 26, 505–07.)

The ALJ credited those aspects of Dr. Muhammud's opinion that were supported by the record evidence. Where Dr. Bradley's opinions were more consistent with the record evidence than were Dr. Muhammud's, the ALJ relied on those opinions instead.

To the extent plaintiff is arguing that the ALJ failed to account for some of the limitations in Dr. Bradley's amended April 2012 opinion, these arguments are unfounded. For example, plaintiff asserts that Dr. Bradley believed that her medication or impairments caused fatigue resulting in frequent napping. To the extent plaintiff is implying that Dr. Bradley stated that she required naps during the day, the record evidence shows that Dr. Bradley did not offer an opinion on this subject. (Tr. 517.) Dr. Bradley stated, "I merely state that several of her medications are sedating and her napping may be consistent with medication effect." (Id.)

Plaintiff also argues that Dr. Bradley's second opinion limited her to occasional reaching, which was inconsistent with the ALJ's finding that she could do frequent reaching. However, the court questions whether plaintiff ever asserted that she had reaching restrictions in that she did not assert any such restrictions in her function report.

(Tr. 193.) Moreover, Dr. Muhammud's assessment did not support reaching restrictions. In fact, he believed that plaintiff could perform continuous overhead reaching. (Tr. 410.) The ALJ therefore did not err in concluding that the record did not support more extensive reaching restrictions.

This court concludes that substantial evidence, including the opinions of Drs. Muhammud, Bradley, and Tishey, supports the ALJ's RFC finding.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 9, 2014